1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

WILLIAM BECKMAN and LINDA
GANDARA, individuals, on behalf of
themselves, and all persons similarly
situated,

                Plaintiffs,

    vs.

ARIZONA CANNING COMPANY,
LLC, a Delaware limited liability
company; and DOES 1 to 10 inclusive,

               Defendant.

CASE NO. 3:16-cv-02792-JAH-BLM

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [DOC. NO. 30]**

18

### INTRODUCTION

19
20
21
22
23
24
25
26
27
28

       This matter comes before the Court on Defendant Arizona Canning Company LLC's ("ACC" or "Defendant") motion to dismiss Plaintiffs William Beckman and Linda Gandara's ("Plaintiffs) second amended complaint ("SAC"). *Doc. No*. 30. Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure ("*Fed. R. Civ. P*.") 8, 9(b), 12(b)(1), and 12(b)(6). The motion has been fully briefed. Along with its motion to dismiss, Defendant filed a request for judicial notice. *Doc. No*. 30-2.  Having considered the parties' submissions, oral argument and for the reasons set forth below, Defendant's request for judicial notice is GRANTED in part and DENIED in part and the motion to dismiss is GRANTED in part and  DENIED in part.

**BACKGROUND**

**A. Factual Background**

Plaintiffs purchased several cans in various sizes of Defendant's Sun Vista canned pinto beans. SAC at 3 ¶7. Sun Vista Beans are sold in 15 oz., 29 oz., 40 oz., and 108 oz. cans, as well as in an 8 pack of 15 oz. cans. *Id*. at 6. Each can of Sun Vista beans, regardless of size, lists water as the first ingredient within the nutrition facts panel, indicates a serving size of one-half cup (4 oz), includes the language "Heat and Serve", and displays an image of a bowl of whole plump beans as seen below. SAC at 8 ¶18.



However, whole plump beans are not what the consumer sees when emptying the can's contents. Unlike the image advertised on the principal display panel, consumers receive mostly water, with a portion of beans fully submerged and undetectable at first sight. SAC at 12 ¶ 36-38.



1    Plaintiffs allege that they relied on, and were misled by, the labeling and
2  advertising displayed on the product's packaging, specifically (1) the image on the
3  label portraying a bowl full of "plump and hardy pinto beans, with a glimmer of
4  shine" and negligible water, (2) the nutrition facts panel, including the net weight,
5  serving size, and number of servings per container, and (3) the size and fill of the
6  opaque container. Plaintiffs claim that the Sun Vista bean labels are false and
7  misleading, the information on the label is deceptive, and the use of water as a
8  filler is concealed from consumers in violation of California's Unfair Competition
9  Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., False Advertising Law
10  ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., and California Consumer Legal
11  Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.

12    **B. Procedural Background**

13    Plaintiffs filed their initial complaint on October 11, 2016 in the Superior
14  Court of California, County of San Diego. *Doc. No.* 1-2. Defendant filed a timely
15  notice of removal and moved to dismiss Plaintiff's initial complaint for failure to
16  state a claim and failure to plead fraud-based claims with sufficient particularity.
17  *Doc. Nos.* 1, 3.  The Court granted Defendant's motion, with leave to amend,
18  finding that Plaintiffs had not met the heightened pleading standard of Rule 9(b) .
19  See *Doc. No.* 18; *Beckman v. Arizona Canning Co., LLC,* No. 16CV02792 JAH-
20  BLM, 2017 WL 4227043 (S.D. Cal. Sept. 21, 2017).  Plaintiffs filed an amended
21  complaint identifying which variety of bean Plaintiffs purchased. *See Doc. No.* 19.
22  Defendant again moved to dismiss, adding two additional grounds: (1) lack of
23  standing pursuant to Rule 12(b)(1) and failure to state a plausible claim for relief.
24  *Fed. R. Civ. P.* 8, 12(b)(1). In light of Defendant's compliance with the Federal
25  Drug Administration's ("FDA") regulation, labeling the ingredients in order of
26  predominance, the Court found the pleadings insufficient with regards to why
27  and/or how the alleged misconduct was misleading or deceptive. The Court further
28  ruled that Plaintiffs did not plead facts indicating compliance with *Cal. Civ. Code* §

1782(a) requiring a pre-filing notice, and therefore were not entitled to damages under the CLRA. *Doc. No.* 27. The Court granted Defendant's motion to dismiss the First Amended Complaint ("FAC") without prejudice. Plaintiffs timely filed the SAC. *Doc. No.* 29.

Now before the Court is Defendant's request for judicial notice and motion to dismiss Plaintiffs' SAC pursuant to Rules 8, 9(b), 12(b)(1), and 12(b)(6) for: (1) failure to state a plausible claim for relief, (2) failure to plead fraudulent claims with sufficient particularity; (3) lack of standing under claim-specific state law requirements; and (4) failure to state a claim upon which relief can be granted. *Doc. No.* 30.

## LEGAL STANDARD

### A. Rule 8

To state a claim for relief, a pleading must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P.* 8(a)(1) & (2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to satisfy "Rule 8(a)(2)'s threshold requirement that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief,'" plaintiff must plead allegations that suggest defendant is likely liable – allegations "merely consistent" with liability are insufficient. *Twombly*, 550 U.S. at 545. The plausibility standard requires more than a mere possibility that defendant acted unlawfully – but less than a probability. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim is facially plausible when a reasonable inference of liability can be drawn from the factual allegations. *Id*. A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *Id.* at 679.

1

### B. Rule 9(b)

2      In addition, under Ninth Circuit case law, Rule 9(b) imposes a heightened,

3  particularized pleading requirement on complaints alleging fraud. *Fed.R.Civ.P.*

4  9(b). First, a plaintiff's claims must "state precisely the time, place, and nature of

5  the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan*

6  *v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); see also *Vess v. Ciba-Geigy Corp*.,

7  U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003) (a plaintiff must set forth the "who,

8  what, when, where and how" of the alleged misconduct). Second, Rule 9(b)

9  requires that the complaint "set forth an explanation as to why the statement or

10 omission complained of was false or misleading." *Yourish v. California Amplifier*,

11 191 F.3d 983, 993 (9th Cir. 1999)(quoting *In re GlenFed Sec. Litig*., 42 F.3d 1541,

12 1548 (9th Cir.1994) (*en banc*)).

13

### C. Rule 12(b)(1)

14      Pursuant to Rule 12(b)(1), a party may move to dismiss an action for "lack

15 of jurisdiction over the subject matter." *Fed. R. Civ. P.* 12(b)(1). If jurisdiction is

16 lacking, the dismissing court is deprived of any power to adjudicate the merits of

17 the case. *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017)

18 (citing *Wages v. I.R.S*., 915 F.2d 1230, 1234 (9th Cir. 1990)). The burden of

19 establishing jurisdiction rests upon the party asserting it. *Kokkonen v. Guardian*

20 *Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994).

21      "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for*

22 *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227

23 F.3d 1214, 1242 (9th Cir. 2000)). A facial attack challenges the allegations as

24 insufficient on their face to invoke federal jurisdiction. *Id*. In reviewing a facial

25 attack on the complaint, a district court must accept the allegations in the

26 complaint as true and determine whether subject-matter jurisdiction has been

27 established. *Berkovitz v. United States*, 486 U.S. 531, 540 (1988).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D. Rule 12(b)(6)**

Rule 12(b)(6) tests the sufficiency of the complaint. *Fed.R.Civ.P.* 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530, 534 (9th Cir. 1984); see *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. The Court must determine whether the complaint alleges enough facts to state a claim for relief. *Fed.R.Civ.P.* 12(b)(6); *Iqbal*, 556 U.S. at  663; *Twombly*, 550 U.S. at 570. For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Jackson v. Carey,* 353 F.3d 750, 758 (9th Cir. 2003). The court will only dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts" that would entitle plaintiff to relief. *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir.1990) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**DISCUSSION**

**A. Requests for Judicial Notice**

The court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 432 F.3d 903, 908 (9th Cir. 2003). Pursuant to Federal Rule of Evidence ("*Fed. R. Evid.*") 201, the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. The party requesting notice carries the burden of showing that the fact is a matter of common knowledge or that the accuracy of the source cannot be reasonably questioned. *Fed. R. Evid.* 201(b).  If a relevant fact is reasonably contested, the evidence should be presented before the trier of fact to make the determination.

ACC moves for judicial notice of three items including: (1) a search conducted through the USDA Branded Food Products Database identifying 15 different bean products listing "water" as the first ingredient in their canned pinto beans; (2) an article entitled Reading Food Labels from the U.S. Department of Health & Human Services, National Institute on Aging; and (3) an article entitled Reading the Ingredient Label: What to Look For from WebMD archives.

1. <u>USDA Branded Food Products Database[1] Profiles</u>

The USDA branded food products database (BFPD) is an online database hosted by the United States Department of Agriculture National Agricultural

---

[1] The BFPD is publicly available at https://ndb.nal.usda.gov/ndb.

1    Library and is a result of a public-private partnership  made up of food industry

2    organizations, collegiate and international institutes, and research centers. *US*

3    *Department of Agriculture, Agricultural Research Service, Nutrient Data*

4    *Laboratory*, USDA Branded Food Products Documentation at 4, August 2018.

5    Internet:   https://ndb.nal.usda.gov/ndb/docs/BFPDB_Doc.pdf.   The information

6    within the BFPD, including descriptions, nutrient data, serving size, and

7    ingredients for each product is provided by food industry organizations voluntarily.

8    *Id*. While the USDA  assists with reformatting and standardizing the data, it neither

9    verifies  nor confirms the accuracy. *Id*.

10        Although the accuracy of the information provided by the BFPD is not

11    challenged by either party, Plaintiff argues that the 15 profiles of which Defendant

12    requests the Court to take notice is an incomplete representation of the database,

13    which includes approximately 361 bean products.  At most, the search results

14    presented by Defendant indicate that at least 15 bean products list water as a

15    primary ingredient. This data falls short of establishing, beyond dispute, any

16    standard within the industry. What may be considered common practice within the

17    food industry is disputed by the parties. Therefore, evidence supporting either

18    position is not subject to judicial notice. *See United States v. Ritchie,* 342 F.3d 903,

19    908-09 (9th Cir.2003)(Courts may take judicial notice of adjudicative facts that are

20    not subject to reasonable dispute.). The Court DENIES Defendant's request for

21    judicial notice of the BFPD search results.[2]

---

[2]  Plaintiffs suggest that the Court may take judicial notice of the fact that the information was in the public realm. However, the USDA Branded Food Products Database officially launched on 16 September 2016. *See* U.S. Dept. of Agriculture, *USDA Announces New Open Data Partnership for Public Health*, Release No. 0198.16, Sept. 16, 2016. The Court does not have sufficient facts by which to determine whether data contained within the BFPD was available in the public realm at the time of Plaintiffs' purchase and therefore also declines to take judicial notice on that basis.

2. <u>Internet Article: U.S. Department of Health & Human Services, National Institute on Aging</u>

ACC requests the Court take judicial notice of a page entitled "Reading Food Labels" from the National Institute on Aging - a subsection of the National Institutes of Health within the U.S. Department of Health & Human Services website:https://www.nia.nih.gov/health/reading-food-labels.The National Institutes of Health (NIH) is the nation's medical research agency. Defendant asks that the Court review the webpage for its factual content and assume its contents are true for purposes of its motion to dismiss. ACC contends such notice is proper when the website is that of a government agency.  Plaintiff concedes, but requests the Court take judicial notice only of the fact that the information was in the public realm at the time.

Judicial notice of information available online is appropriate if "it was made publicly available by [a] government entit[y]…and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010). The only contention raised by Plaintiff is whether consumers have knowledge of the information contained therein.  However, neither the accuracy of the information, nor the authenticity of the website are in dispute. Accordingly, the Court GRANTS Defendant's request and takes judicial notice of the webpage entitled "Reading Food Labels."  See *County of Santa Clara v. Astra USA, Inc*., 401 F.Supp.2d 1022, 1024 (N.D.Cal.2005) (taking judicial notice of information posted on a Department of Health and Human Services web site).

3. <u>Internet Article: WebMD</u>

Defendant also submits an online article from the archives of WebMD entitled "Reading the Ingredient Label: What to Look For."  The information contained in the article was not published by a government entity, but instead provided by a private freelance writer. Despite the utility of the WebMD platform,

it cannot be said that the information contained within the article was derived from a "source[] whose accuracy cannot reasonably be questioned." Accordingly, the Court takes judicial notice only of the fact that the internet article is publicly available - not the truth of the matters asserted therein.

## B. California's UCL, FAL and CLRA

Plaintiffs bring causes of action under the UCL, FAL and CLRA for manufacturing and producing Sun Vista pinto beans with allegedly misleading and deceptive packaging. California's UCL prohibits "unfair competition" which includes any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Cal. Bus. & Prof. Code* § 17200; *see also Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (explaining that the statute is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 ("FAL")). Each "prong" of the UCL provides a separate and distinct theory of liability. *Id*.

Plaintiffs assert claims under all three prongs of the UCL. Under the unlawful prong, Plaintiffs claim Defendant's conduct violated certain provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA")[3] and the corresponding state laws which incorporate the requirements of the FDCA, commonly referred to as the Sherman Food, Drug and Cosmetic Laws.[4] Plaintiffs assert ACC's conduct is also unfair under the UCL because it violates the policy of 15 U.S.C. § 1451 by preventing consumers from being able to obtain accurate information to facilitate value comparisons. Last, Plaintiffs allege that the practice of falsely advertising, misrepresenting, and misbranding Sun Vista Beans constitutes fraud because

---

[3] Specifically, Plaintiffs allege violations of : (1) 21 U.S.C. § 331(a), which prohibits introduction into interstate commerce of misbranded food; (2) 21 U.S.C. § 331(b), prohibiting the adulteration or misbranding of any food; and (3) 15 U.S.C. §1452, making it unlawful to package or label any consumer commodity which does not conform to the Fair Packaging and Labeling Program set forth in 15 U.S.C. Chapter 39.

[4] Plaintiffs summarily list Cal. Health & Safe. Code sections: § 110390 (prohibiting the dissemination of false advertising); §110395 (prohibiting the manufacture or sell of falsely-advertised products); §110398 (making it unlawful to advertise a misbranded product); §110760 (making it unlawful to manufacture or sell any misbranded product); and §110765 (making it unlawful to misbrand any food). (SAC ¶ 88(a)-(e).)

consumers are likely to be, and are, deceived as to quality and quantity of the product they are purchasing. Plaintiffs allege that any statement made in connection with the sale of a product is advertising, including statements on the product's label, and therefore the same conduct which violates the fraudulent prong of the UCL also violates the FAL.

The FAL prohibits the dissemination of any advertisement concerning real or personal property, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Cal. Bus. & Prof. Code* § 17500. The California Supreme Court has recognized that:

> Any violation of the false advertising law ... necessarily violates" [the fraudulent prong of] the UCL. *Committee on Children's Television, Inc. v. General Foods Corp*., 35 Cal.3d 197, 210 (1983). We have also recognized that these laws prohibit "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985). Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, "it is necessary only to show that 'members of the public are likely to be deceived.'" *Committee on Children's Television, Inc. v. General Foods Corp*., *supra*, 35 Cal.3d at 211; *accord*, *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992).

*Kasky v. Nike, Inc*., 27 Cal. 4th 939, 950-51(2002), *as modified* (May 22, 2002).

The same standard is applied for conduct alleged to be deceptive or misleading under the CLRA. *Williams v. Gerber Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008). The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices…intended to result or which results in the sale…of goods…to any consumer." *Cal. Civ. Code* § 1770(a). Conduct is considered deceptive or misleading if the conduct is "likely to deceive" a "reasonable consumer." *Williams*, 552 F.3d at 938; *see also Colgan v. Leatherman Tool Group, Inc.* 135 Cal.App.4th 663, 682 (2006). Therefore, when determining whether a complaint should be dismissed at the pleading stage, claims for violation of the

-11-

FAL, CLRA, the fraudulent, (and in this instance, the unlawful) prong of the UCL are analyzed simultaneously. *See Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 996 F.Supp.2d 942, 985 (S.D. Cal. 2014) ("Courts often analyze these statutes together because they share similar attributes.")) In sum, "any advertising scheme involving false,[5] unfair, misleading or deceptive advertising of food products equally violates [the unfair competition law, the false advertising law, and the Sherman Food, Drug and Cosmetic Law.]" *Comm. On Children's Television, Inc. v. Gen. Foods Corp*., 35 Cal. 3d 197, 211 (1983).

### C. ACC's Motions to Dismiss

First, Defendant moves to dismiss Plaintiffs' SAC on grounds that it fails the pleading requirements under Rules 8 and 9(b). *Fed. R. Civ. P*. 8, 9(b). Defendant also challenges Plaintiffs' standing to sue for products not purchased and argues that the facts alleged are insufficient to state a claim for relief under 12(b)(6). *Fed. R. Civ. P*. 12(b)(1), 12(b)(6). The Court addresses each in turn.

#### 1. Rule 8: Plausibility of the Allegations

"Courts will dismiss false advertising and similar claims when, construing the factual allegations in the light most favorable to the plaintiff, the challenged advertising statements would not plausibly deceive a reasonable consumer." *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co*., No. 4:15 CV 384 RWS, 2016 WL 3227676, at *3 (E.D. Mo. June 13, 2016)(citing e.g. *Red v. Kraft Foods, Inc*., No. CV 10-1028-GW AGRX, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012)). "Questions of fraud may be determined in the light of the effect advertisements would most probably produce on ordinary minds," not considering those who are "exceptionally acute or sophisticated" buyers. *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 509 (2003).

---

[5] An advertisement is considered "false" under California law if it is misleading. Cal. Health & Safety Code § 110390.

To state a cause of action, it is necessary *only* to show that the general public is likely to be deceived. (emphasis added) *Gen. Foods Corp*., 35 Cal. 3d at 211. (quoting *Chern v. Bank of America*, 15 Cal.3d 866, 876 (1976)).

> Likely to deceive" implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled .

*Lavie*, 105 Cal. App. 4th at 508. Plaintiffs need not allege actual deception, reliance or damages. *Gen. Foods Corp*., 35 Cal. 3d at 211. However, the SAC must contain factual allegations that allow the Court to draw a reasonable inference that ACC's product label is likely to mislead the reasonable consumer into believing a can of Sun Vista Pinto beans is primarily filled with beans, as opposed to water. Based on an informal survey, Plaintiffs allege that when consumers were asked to look at a can of Defendant's Sun Vista Beans, each consumer expressed a belief that the can was predominantly filled with beans. SAC ¶ 28 n.2.

ACC contends that Plaintiffs unreasonably looked to the picture to determine the can's ingredients, instead of the ingredients label.  Citing *Williams v. Gerber Product Co*., Plaintiffs respond that the reasonable consumer is not expected to look past the misleading information on the display panel to find the truth listed in small print in the ingredients section.  552 F.3d 934, 938 (9th Cir. 2008). Plaintiffs allege: (1) that the image of ready-to-serve beans is misleading because even after "heating and serving," the contents of the can look more like soup then a bowl full of plump and hardy beans, (2) that the label is misleading because the serving size gives the impression the consumer will receive 4 oz of beans per serving, but actually receive less than 2oz, and (3) consumers are deceived because the standard is to predominately fill cans with beans, not water or fillers. In addition, Plaintiffs allege that because Sun Vista Beans are sold in opaque canned containers, consumers depend upon the product advertisement,

label, and the fill of the can to conduct product comparisons and make purchasing decisions.



Here, pictured in the forefront of Defendant's pinto bean can are images of a prominent red bowl of cooked pinto beans, surrounded by a few green leaves, white onions cut in half or quarters, portions of a sliced tomato, and a couple garlic cloves on a bed of dehydrated pinto beans. These food images are displayed in the center of the can under a waving banner that reads "Pinto Beans" in both English and Spanish.

First, the Court recognizes that images can reasonably be interpreted to have various meanings. See *Wysong Corp. v. APN, Inc*., 266 F. Supp. 3d 1058, 1068 (E.D. Mich. 2017), *aff'd sub nom. Wysong Corp. v. APN, Inc.* (17-1975), 889 F.3d 267 (6th Cir. 2018) (discussing the use of graphics for identification purposes, to indicate a flavor, a primary ingredient, or any ingredient contained within the product.); *see also Red v. Kraft Foods, Inc.,* No. CV 10-1028-GW AGRX, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012)(finding that a reasonable consumer would not be deceived into believing a box of crackers is primarily composed of fresh vegetables simply because there are pictures of vegetables on the package). In *Wysong Corp. v. APN, Inc*., a Lanham Act case in which the same "reasonable consumer" test was applied, the district court found that the images of premium cuts of meat on dog food packaging, standing alone, would not mislead a reasonable consumer to believe that the dog food  contained those particular cuts of meat. 266 F. Supp. 3d 1058. The court reasoned that "the context and character of the image - its size, its color, its placement on the package, the surrounding images, its relationship to the product's name and other descriptive text on the package, etc. - determines which of these messages (or others) the image may

plausibly be understood to convey." *Wysong Corp.*, 266 F. Supp. 3d at 1071. Both Federal and state law emphasize the importance of context, "judicial experience" and "common sense." *Iqbal*, 556 U.S. at 679; *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d Cir. 2011); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013); *see also Cal. Health & Safety Code* § 110290 ("In determining whether the labeling or advertisement of a food…is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.")

The Court now turns to the possible interpretations or messages communicated as a result of the image displayed on Defendant's Sun Vista pinto beans. First, the possibility that any consumer would interpret the image of beans to indicate a flavor would be unreasonable and defy common experience. The general public is likely to interpret the image of cooked beans as either: (1) identifying the type of bean being sold or (2) depicting the can's contents. The dehydrated beans in the background and the placement of the bowl of hydrated beans in the forefront, support the later. More so, when comparing the image of this product with Defendant's other bean product - pinto beans with jalapenos - which show chopped jalapenos sprinkled throughout the bowl of beans, the message likely conveyed to consumers is that the image indicates the can's contents. Defendant, however, describes the image as "a picture of beans as they are suggested for serving." While this interpretation seems reasonable, it is contrary to the detailed information offered within the nutrition fact panel, which indicates the primary ingredient is water. For this "suggestion" to be accepted, consumers must drain more than half of the can's contents – leaving the consumer with either a smaller serving size or significantly less servings than represented.

Unlike other packaged food products, such as fruit snacks, *Williams*, 552 F.3d at 939, vegetable crackers, *Red,* WL 5504011, at *3, juice drinks, *POM Wonderful LLC v. Coca-Cola Co.,* 573 U.S. 102, 108-109 (2014), and dog food,

*Wysong Corp*., 266 F. Supp. 3d at 1071, beans are not made up of various heterogenous ingredients. Pinto beans are sold hydrated, dehydrated, refried, or at times with added vegetables. A consumer could reasonably believe that a can labeled "pinto beans," with no additional descriptor, is primarily filled with just that -pinto beans. Despite no express misrepresentation, an advertisement may be misleading due to omissions, or "because advertisements are composed or purposefully printed in such [a] way as to mislead." *Lavie*, 105 Cal. App. 4th 496, 509 (2003).

In addition, Plaintiffs allege that the net weight, serving size, and number of servings per container are deceiving, thereby misleading the consumer to believe beans are the predominant ingredient. Plaintiffs claim that consumers are misled because the information does not truthfully or accurately reflect the amount of pinto beans within the can. The SAC further alleges that Plaintiffs and other putative class members reasonably believed that the serving size on the can reflected the amount of "pinto beans" per serving. Plaintiffs provide the following example:

> According to the Nutrition Facts section for a 29 oz. can of Sun Vista whole pinto beans, the product contains [sic] "about 6 servings." Pursuant to the label, a serving is defined as one half cup, or 4 oz. With this information a reasonable consumer can deduce that a 29 oz. can of Sun Vista Beans contains approximately 3 full cups, or 24 oz., of pinto beans, and about 0.625 cups, or 5 oz., of water[;] [r]resulting in a container that is mostly filled with beans…. a serving size of one-half cup, or 4 oz., should contain approximately 4 oz. of pinto beans and 0.83 oz. of water.

Instead, after investigation, Plaintiffs allege that a 29 oz. can of Sun Vista pinto beans contains about 1.6 cups, or 13 oz., of whole pinto beans and about 2 cups, or 16 oz., of water.

| Amount in 29 oz. Can According to Label | Actual Amount in 29 oz. Can |
|---|---|
| 24 oz. (3 cups) of pinto beans and 5 oz. (.0625 cups) of water | 13 oz. (1.6 cups) of pinto beans and 16 oz. (2 cups) of water |

1    Plaintiffs' chart, however, ignores the fact that water is listed as the first, and

2    therefore most predominant, ingredient. See 21 CFR § 101.4(a)(1).  Although not

3    disputed, Plaintiffs argue that the FDA requirement that food manufactures list

4    ingredients in order of predominance is not information commonly known amongst

5    reasonable consumers. Whether or not the ordinary mind is well versed with FDA

6    regulations, the reasonable consumer is aware that each serving is composed of *all*

7    ingredients, including water, pinto beans, salt, sugar, calcium, etc.   It is not

8    plausible that a reasonable consumer would believe the entire 4oz serving

9    consisted of only one ingredient.  However, based upon common experience, one

10   serving of cooked ready-to serve "pinto beans," typically does not have the same

11   consistency as soup, despite possibly being in a gravy-like sauce. If the serving-

12   size multiplied by the number of servings  is an amount relatively close to the can's

13   capacity, a consumer may reasonably believe that the can is filled nearly to

14   capacity with the ingredient advertised and reflected in the name of that product –

15   *e.g.* potato chips, tuna fish, dill pickles, beans, etc.

16       Defendant argues that consumers should look to the ingredient list to

17   determine the can's contents. Although this argument holds some merit, most

18   shoppers digest the information on the back after seeing the pretty picture on the

19   front.  Although the display panel is viewed first, "all representations made or

20   suggested" are considered in determining whether Defendant's packaging is

21   misleading. *Cal. Health & Safety Code* § 110290. Indeed, the reasonable consumer

22   takes some time to digest the information offered within the various sections of the

23   product's label, including the nutrition facts, ingredients list, serving size, and can

24   size.  Consumers often  review the ingredients for health reasons, such as to avoid

25   unhealthy additives or potentially deadly allergens. Less often do consumers

26   analyze which ingredient is most predominant - especially if it appears obvious

27   from the name of the product or the label's display panel.  The Court agrees that "a

28   product label can [still] be misleading even if the alleged misrepresentation is

corrected [i]n the ingredient list." *Ham v. Hain Celestial Grp., Inc*., 70 F. Supp. 3d 1188, 1194 (N.D. Cal. 2014) (citing e.g., *Williams*, 552 F.3d at 939).  A label may trick or deceive consumers even if it complies with FDA regulations. *See POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102, 110 (2014) (analyzing the interplay between federal unfair competition law (The Lanham Act) and the FDCA). Construing the factual allegations in the light most favorable to Plaintiffs, the Court finds Plaintiffs have sufficiently alleged that a significant portion of the consuming public, acting reasonably, could be misled, *Lavie*, 105 Cal. App. 4th at 508, due to Defendant's Sun Vista Pinto Bean label having the "capacity, likelihood or tendency to deceive or confuse the public." *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985).

### 2. Rule 9(b): Particularity of the Allegations

Rule 9(b) requires fraud claims to consist of specific factual allegations that indicate why allegedly fraudulent statements are false or misleading. *In re Glenfed, Inc. Sec. Litig*., 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), superseded by statute on other grounds as stated in *Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.") Defendant moves to dismiss the SAC on the ground that it does not satisfy the particularity requirements of Rule 9(b). Defendant argues that Plaintiffs have failed to identify any untrue statement or indicate how or why the label is purportedly false or misleading considering the accuracy of the information contained on the nutrition facts panel. ACC highlights that: (1) it "truthfully list[s] water as the first ingredient on the label" and (2) Plaintiffs admit water is expected in a can of rehydrated beans.

Plaintiffs allege that Defendant's packaging is misleading because the image on the label does not accurately depict what the consumer can expect to find in the container. Plaintiffs allege that they reviewed the label when making their purchasing decisions and believed that they were purchasing a product that was

predominately filled with beans. In addition, Plaintiffs allege that the opaque containers "force consumers to rely on the industry standard" that cans of whole pinto beans are predominantly filled with pinto beans. Having declined judicial notice of selective hand-picked search results within the BFPD, the Court has no facts by which to determine, nor have the parties established, an industry standard. However, as examined above, the image displayed on Defendant's pinto bean packaging can reasonably be interpreted by consumers as depicting the can's contents, as opposed to indicating a flavor or merely identifying the type of bean. Whether before or after following the "Heat and Serve" directions on the can, Plaintiffs allege the contents appear nothing like the image in the advertisement. Specifically, Plaintiffs allege that after viewing the product's packaging, they believed the can was predominantly filled with beans, not water and that the image "failed to accurately reflect the bean to water ratio." Accordingly, Plaintiffs have sufficiently plead how the packaging is misleading or deceptive.

### 3. Rule 12(b)(1): Standing for Products Not Purchased

A Plaintiff may have standing to assert claims for unnamed class members based on products not purchased so long as the products and alleged misrepresentations are substantially similar. *See Miller v. Ghirardelli Chocolate Co*., 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). In cases where the unpurchased product and the purchased product are dissimilar or require an "individualized factual inquiry," the claims will be dismissed. See *Astiana v. Dreyer's Grand Ice Cream, Inc*., No. C–11–2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012). Once a court is satisfied that Plaintiffs have alleged uniform misrepresentations across product lines, the question of standing should be in the context of a motion for class certification under Rule 23, rather than a motion to dismiss or strike.[6] *Brown v. Hain Celestial Grp., Inc*., 913 F. Supp. 2d 881, 891

---

[6] Standing is a jurisdictional issue raised either in a 12(b)(1) motion or motion for class certification. See e.g., *Cardenas v. NBTY, Inc*., 870 F.Supp.2d 984, 992–93 (E.D.Cal.2012) (analyzing "solely under Rule 23" whether

1    (N.D. Cal. 2012).  This requires the Court to consider whether there are substantial

2    similarities in the accused products and whether there are similar

3    misrepresentations across product lines.  *Miller*, 912 F. Supp. 2d at 869.

4         Plaintiffs allege that they purchased multiple cans of Sun Vista pinto beans

5    in different sizes, including but not limited to an 8 pack of 15 oz. cans and a 29 oz.

6    can. Plaintiffs further plead that they inspected the labels of all can sizes, and

7    regardless of size, the cans: (1) list water as the first ingredient, (2) include more

8    water than beans, (3) include similar serving size information, (4) include the

9    language "Heat And Serve," (5) are sold in opaque containers, and (6) depict a

10   bowl of full and hardy pinto beans, with a glimmer of shine and little to no water.

11   Plaintiffs also allege that the "same or similar discrepancies are found" in all the

12   can sizes. Defendant contends Plaintiffs did not view the contents of the alternate-

13   sized cans not purchased and thus cannot plead that the contents are substantially

14   similar to the can-sizes that they did purchase. SAC ¶¶ 7(b), 8(b), 20-22, 50; Opp.

15   ¶¶ 14:19-15:5.

16        The Court need only be "satisfied that Plaintiffs have *alleged* uniform

17   misrepresentations." See *Brown*, 913 F. Supp. 2d at 891.   The factual allegations

18   regarding the amount of water versus  beans, the images on the display panel, the

19   can's fill and design, and the serving size information provided are common

20   among all can sizes and are a substantial part of Plaintiffs' case. At this stage of the

21   proceedings, the Court finds Plaintiffs have alleged substantially similar

22   misrepresentations for each can size based on information and belief, *Miller*, 912

23   F. Supp. 2d at 869, and therefore DENIES Defendant's motion to dismiss for lack

24   of standing.

25

26

27   plaintiff may assert claims on behalf of purchasers of products she did not purchase); *Forcellati v. Hyland's, Inc.*,
28   876 F.Supp.2d 1155, 1161 (C.D.Cal.2012) (denying defendants' motion to dismiss because the "argument is better
     taken under the lens of typicality or adequacy of representation, rather than standing").

### 4. Rule 12 (b)(6): Sufficiency of the Allegations

Defendant contends that Plaintiffs fail to allege sufficient factual allegations for relief under the UCL, FAL, and CLRA.  As discussed above, any advertising scheme involving false, unfair, misleading or deceptive advertising of food products equally violates the UCL, FAL, and the Sherman Food, Drug and Cosmetic Law. *Comm. On Children's Television, Inc. v. Gen. Foods Corp*., 35 Cal. 3d 197, 211 (1983). To state a false advertising claim, it is necessary only to show that the general public is likely to be deceived. *Id*.  The Court, having found the alleged facts sufficient to support a plausible inference that the challenged label is likely to deceive the reasonable consumer, finds that Plaintiffs' allegations are sufficient to support a claim under the FAL, as well as the unlawful and fraudulent prongs of the UCL. *Id.*

### a.  UCL Claim: Unfair Prong

The unfair prong of the UCL requires a separate analysis. *See Hodsdon v. Mars, Inc*., 891 F.3d 857, 865 (9th Cir. 2018) (discussing the definition of "unfair" as it relates to conduct against consumers and the evolution of California case law). California courts in consumer actions have used three different tests: (1) the balancing test set forth in *S. Bay Chevrolet v. General Motors Acceptance Corp*., 72 Cal. App. 4th 861, 886 (1999), (2) the tethering test set forth in *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal.4th 163, 83 (1999) and (3) the three-pronged test set forth in the Federal Trade Commission Act. *But see Lozano v. AT & T Wireless Servs., Inc*., 504 F.3d 718, 736 (9th Cir. 2007) (finding the FTC test inappropriate in anti-consumer litigation).[7]  Plaintiffs assert that their claims meet all three, however, pursuant to *Lozano*, the Court focuses only on the parties'

---

[7] In *Lozano*, the Ninth Circuit mentioned the California Supreme Court's reference to section 5 of the FTCA as a source of "guidance," but highlighted that the discussion revolved around anti-competitive conduct, rather than anti-consumer conduct and therefore found the FTC test inappropriate.

arguments regarding the balancing test under *South Bay* and the tethering test set forth in *Cel-Tech.*

Under the balancing test:

[C]ourts must examine the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In short, this balancing test must weigh "the utility of the defendant's conduct against the gravity of the harm to the alleged victim. (internal citations and quotations omitted).

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)(citing *S. Bay Chevrolet,* 72 Cal. App. 4th at 861.)

Plaintiffs contend that any value gained from selling a less-than-half-full product to unsuspecting consumers is outweighed by the harm consumers experience from unknowingly purchasing a product less than half-full. Plaintiffs claim the practice is unjust because consumers are not receiving the benefit of their bargain and are being misled into purchasing a product they otherwise would not have purchased.

Although no reason or justification for the challenged conduct is provided, Defendant claims that food manufacturers would be "unnecessarily stifled from displaying their product on the label."  The Court finds Defendant's argument unpersuasive. Countless food manufactures have successfully displayed and marketed their product without consumer confusion or a likelihood of deception. It is only those labels which are false or likely to deceive which the law prohibits. *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985). The Court finds that any utility derived from Defendant's practice and desire to display an image of a "suggested serving" of beans, that omits or abates the predominant ingredient, is outweighed by the  alleged negative impact on Plaintiffs and other putative class members. The Court therefore finds Plaintiffs' allegations are sufficient to state a claim under the unfair prong of the UCL  applying the balancing test.

Under the tethering test, "unfair means conduct that threatens an incipient violation of an antitrust law or violates the policy or spirit of one of those laws

because its effects are comparable to or the same as a violation of the law…" *Davis,* 691 F.3d at 1169-70.  This test requires the alleged unfair practice be tied to a "legislatively declared" policy. *Lozano,* 504 F.3d at 736; *see also Hodsdon*, 891 F.3d at 866. (explaining that California courts require a close nexus between the challenged act and the legislative policy).

Plaintiffs allege that Defendant's business practices are unfair because they violate the public policy of 15 U.S.C. § 1451, which outlines the congressional intent of the Fair Packaging and Labeling Program. 15 U.S.C. Ch.39; 15 U.S.C. § 1451. Plaintiffs argue that the alleged conduct violates the spirit of the FDCA[8] and the Sherman Food, Drug, and Cosmetic Law, which impose regulations on the marketing of consumer goods to assist consumers with obtaining accurate information and facilitate value comparisons.  Citing the Ninth Circuit, in *POM Wonderful LLC,*  and relying on this Court's order dismissing the FAC, Defendant argues that as a matter of public policy, it is common for food/beverage products to indicate items on the principal display panel that are not the predominant ingredient. 679 F.3d at 1177, *rev'd on other grounds*, 573 U.S. 102, (2014). Although true, in certain instances, the FDA has implemented regulations to avoid public confusion by requiring the manufacture to declare the percentage of the named, non-predominant ingredient or indicate that the ingredient is present as a flavoring.  *POM Wonderful LLC*, 573 U.S. at 108-09 (citing 21 C.F.R. § 102.33 (2013)). Ultimately reversing the Ninth Circuit decision, the United States Supreme Court held that compliance with the FDCA and its regulations does not preclude a claim challenging a food label as deceptive or misleading. *Id.*  It is quite possible to comply with FDA regulations and still violate the policy or spirit underlying those regulations. Moreover, a violation of the FAL and fraudulent

---

[8]  The United States Supreme Court recognized that the FDCA statutory regime is designed primarily to protect the health and safety of the public at large. *POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102, 108 (2014)(citing FDCA, § 401, 52 Stat. 1046, 21 U.S.C. § 341 and highlighting that the FDA may issue certain regulations to "promote honesty and fair dealing in the interest of consumers").

1  prong of the UCL equates to a violation of the Sherman Food, Drug, and Cosmetic
2  Law, *Gen. Foods Corp*., 35 Cal. 3d at  211, as well as the policy underlying that
3  law. Therefore, the Court finds Plaintiffs' allegations meet the *Cel-Tech*  tethering
4  test and are sufficient to state a claim under the unfair prong of the UCL .

5        *b. CLRA Claim*

6        The CLRA prohibits "[r]epresenting that goods… have… characteristics…
7  which they do not have;"… "[r]epresenting that goods…are of a particular
8  standard, quality, or grade…if they are of another;" or "[a]dvertising goods or
9  services with intent not to sell them as advertised." *Cal. Civ. Code* §§ 1770(a)(5),
10  (a)(7), (a)(9).  Defendant asserts Plaintiffs fail to state a claim because they do not
11  meet the "reasonable consumer" standard. For the reasons stated above, this
12  argument fails.  The SAC is sufficient to state a claim for injunctive relief and
13  restitution; however, it is insufficient to state a claim for damages.

14        In the order granting Defendant's motion to dismiss the FAC, the Court
15  found Plaintiffs had not plead facts indicating notice was provided to Defendant
16  pursuant to Cal. Civ. Code § 1782(a). Plaintiffs may not claim damages under the
17  CLRA without giving Defendant the statutorily required opportunity for
18  settlement. Accordingly, to the extent Plaintiffs assert a claim for damages, the
19  Court dismisses Plaintiffs' claim for damages under the CLRA with prejudice,
20  leaving intact the CLRA claim for attorneys' fees and costs, injunctive relief, and
21  restitution. *See Cattie v. Wal-Mart Stores, Inc*., 504 F. Supp. 2d 939, 950 (S.D. Cal.
22  2007).

### CONCLUSION

23  
24      Based on the foregoing,   IT IS HEREBY ORDERED:
25      1. Defendant's Request for Judicial Notice is GRANTED in part and
26         DENIED in part. The Court:
27            a.  DENIES the request for judicial notice of 15 bean-product profiles
28              contained in the BFPD.

b.  GRANTS the request for judicial notice of the Department of Health and Human Services webpage entitled "Reading Food Labels;" and

c.  GRANTS judicial notice of the fact that the WebMD article, and the information contained therein, is publicly available.

2.  Defendant's Motion to Dismiss the SAC is GRANTED in part and DENIED in part.  Plaintiffs' claim for damages under the CLRA is DISMISSED with prejudice. Any request for damages in the prayer for relief as a result of Plaintiffs' CLRA claim is STRICKEN. In all other respects, Defendant's Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

DATED:  September 9, 2019

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT COURT